IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES DICKERSON                    :        CIVIL ACTION
                                   :
              v.                   :
                                   :
DESIMONE AUTO GROUP, INC.,         :
     et al.                        :        NO. 09-1551


MEMORANDUM

McLaughlin, J.                                  August 4, 2009

        James Dickerson filed a complaint on April 13, 2009,
alleging that the DeSimone Auto Group, Randy Foreman, Anthony
Weiss, and John Doe defendants one through ten, violated the
plaintiff's rights in the sale of a pickup truck to the plaintiff
and in the initiation of criminal proceedings against him.  The
plaintiff's claims with respect to the sale and financing of the
truck arise under the Pennsylvania Unfair Trade Practices and
Consumer Protection Law, the Pennsylvania Motor Vehicle Sales
Finance Act, and the Federal Equal Credit Opportunity Act.  The
plaintiff also asserts claims of fraud and fraudulent
misrepresentation, abuse of process, malicious prosecution and
the violation of the plaintiff's civil rights under 42 U.S.C. §
1983 with respect to the plaintiff's arrest and the criminal
proceedings against him.

        The defendants have moved to dismiss the case on the
basis of an arbitration agreement signed by the plaintiff upon
the purchase of the pickup truck.  The defendants argue

alternatively that certain of the plaintiff's counts fail to state claims as a matter of law and that the complaint should be amended to provide a more definite statement with respect to the plaintiff's Motor Vehicle Sales Finance Act and Equal Credit Opportunity Act claims.

I.   <u>Facts Alleged in the Complaint</u>

The plaintiff alleges that on January 12, 2008, a representative of defendant DeSimone, Inc., contacted him about the sale of a vehicle.  That representative stated that the plaintiff was pre-approved for financing and that he could secure a loan without a down-payment on the vehicle of his choice.  On that same day, the plaintiff went to DeSimone and purchased a 2004 Chevy Silverado for the price of $16,383.05.  Compl., ¶¶ 10-13.

The plaintiff, upon returning home with the truck, installed a large toolbox in the bed of the truck and replaced the existing rims with another set of rims.  On January 17, 2008, defendant Weiss allegedly called the plaintiff at home and asked for a $1,500 down payment on the truck.  The plaintiff informed Weiss that he could not make that payment.  Weiss allegedly told the plaintiff that he should contact his credit union for a cash advance in order to make the down payment and keep the truck. <u>Id.</u>, ¶¶ 15-19.

2

The plaintiff alleges that he began receiving notices of rejection of financing applications made on his behalf by DeSimone from various financial institutions.  Those letters stated that they were rejecting a loan to the plaintiff because the amount requested was greater than the value of the purchased truck.  Id., ¶¶ 20-21.

The complaint states that on January 21, 2008, the plaintiff came to believe that the defendants had failed to secure financing on his behalf.  On January 22, 2008, the plaintiff returned the truck to DeSimone.  He had previously removed the toolbox installed in the bed of the truck, but alleges that he forgot to replace the original rims.  Id., ¶¶ 23-25.

On the same day that the truck was returned, the plaintiff allegedly received a call from defendant Foreman who demanded the return of the original rims and accused the plaintiff of vandalism.  Foreman allegedly threatened to call the police and ask for the plaintiff's arrest.  On January 24, 2008, officers of the Philadelphia Police Department arrested the plaintiff at his home for theft of the rims of the truck.  Id., ¶¶ 24-27.

The plaintiff was charged with theft and receiving stolen property.  He was released on his own recognizance after spending one night in the Philadelphia Police Department's

central lockup.  On April 25, 2008, the plaintiff appeared for a preliminary hearing at which defendant Foreman allegedly testified that he turned over the truck to the plaintiff so that the plaintiff could secure his own financing.  At that hearing, the district judge ordered that the plaintiff be tried on both criminal charges.  Trial was delayed several times, and the District Attorney's office ultimately decided to nolle prosse the charges against the plaintiff.  Id., ¶¶ 29-42.

II.  Analysis

        The defendants have moved to compel arbitration of the entire case pursuant to an agreement executed by the plaintiff in connection with the sale of the truck.  The defendant represented to the Court at oral argument on the pending motion, however, that they would prefer to waive enforcement of this arbitration agreement in the event that the Court finds that it applies to less than all claims in the plaintiff's complaint.

        The defendants also move to dismiss the plaintiff's counts under the Pennsylvania Unfair Trade Practices Act, the plaintiff's count for fraud, the plaintiff's abuse of process claim and the plaintiff's malicious prosecution claim.  They have also moved for a more definite statement of the plaintiff's claims under the Motor Vehicle Sales Finance Act and the Equal Credit Opportunity Act.  Finally, the defendants have moved to

4

dismiss certain of the plaintiff's claims for relief.


A.   The Parties' Arbitration Agreement

     The Federal Arbitration Act (FAA) applies to all
agreements made to arbitrate disputes arising out of interstate
commerce.  9 U.S.C. § 2.  The Act manifests a federal policy
favoring the enforceability of arbitration agreements.  Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20 (1991).

     The plaintiff challenges the defendants' reliance on
the arbitration clause of the contract signed by himself and the
defendants by claiming that the arbitration clause itself is
unenforceable.  In such a situation, where the arbitration clause
alone is challenged, the FAA permits a district court to review
the enforceability of that clause.  See Buckeye Check Cashing,
Inc. v. Cardegna, 546 U.S. 440, 449 (2006).

     The enforceability of an arbitration agreement may be
challenged "upon such grounds as exist at law or in equity for
the revocation of any contract."  9 U.S.C. § 2.  Courts are to
find the grounds which would justify revocation of the
arbitration agreement in applicable state contract law.
Alexander v. Anthony Intern., L.P., 341 F.3d 256 (3d Cir. 2003).

     The contract at issue was executed in Pennsylvania, by
two parties from Pennsylvania, for goods and services to be
provided in Pennsylvania, and with an arbitration clause naming

Philadelphia County as the site of any arbitration over the contract.  Pennsylvania law applies to the contract at issue.

The plaintiff has argued three reasons as to why the Court should hold the parties' arbitration contract unenforceable due to unconscionability.  First he says that an agreement is void "where there was a lack of meaningful choice in the acceptance of the challenged provisions and the provision unreasonably favors the party asserting it."  Opp'n at 12.  This is simply a statement of a legal conclusion, describing procedural and substantive unconscionability, respectively.  Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007).

Pennsylvania law recognizes unconscionability as a defense against the enforcement of a contract provision.  Salley v. Option One Mortg. Corp., 925 A.2d 115, 118-20 (Pa. 2007).  As to the charge of procedural unconscionability and the lack of meaningful choice, however, the Court holds that the plaintiff was under no undue pressure to purchase the truck or sign any portion of the contract associated with that sale.

As to substantive unconscionability, the plaintiff states that the mandatory arbitration places too high a cost on the plaintiff that he cannot effectively vindicate his rights.  The burden of establishing the unconscionability of an agreement lies with the party seeking to invalidate that agreement.  Salley v. Option One Mortgage Corp., 925 A.2d 115, 129 (Pa. 2007).  In

6

this case the plaintiff not gone beyond the assertion that
arbitration is, generally, an expensive process.  Such an
assertion is insufficient to demonstrate the unconscionability of
the parties' arbitration agreement.  Moreover, as discussed
below, the Court will only compel the arbitration of the
plaintiff's claims relating to the financing of the purchase of
the truck.  The Court expects that a case based largely on
documents and the testimony of a few witnesses will not amount to
prohibitively high costs for this plaintiff.

   The plaintiff also makes an assertion of fraud in
relation to the arbitration agreement.  Opp'n at 14.  The
plaintiff's argument on this point pertains to the circumstances
of the parties' entire transaction and not to the arbitration
clause itself.  In such a case, the issue is properly argued to
the arbitrator, not to the Court.  <u>Buckeye Check Cashing</u>, 546
U.S. at 449.

   The plaintiff also asserts that the arbitration
agreement was without consideration.  Opp'n 12, 14.  He states
that no consideration was given separate from the consideration
for the underlying retail installment sale contract.  However,
the arbitration agreement was signed in connection with the
entire contract for the sale of the truck at issue in this case.
That truck served as consideration for the plaintiff's agreement
to arbitrate any disputes arising out of the contract for the

7

sale of that truck.  The agreement is not void for lack of consideration.

Finally, the plaintiff has argued in his opposition to the motion to compel arbitration and at oral argument that the arbitration agreement is too vague to be enforced.  His position is that the arbitration agreement does not specify the potential claims made subject to arbitration.  Opp'n at 14.  The agreement, however, is clear that all claims arising in connection with the contract for the sale of the truck to the plaintiff are made subject to arbitration.  Defs' Mot., Ex. A.  The contract is not vague and is enforceable.

The Court must next address the scope of the arbitration agreement.  Arbitration is a matter of contract and a court may not compel parties to arbitrate disputes that do not fall within the scope of a given arbitration agreement.  <u>Lincoln Univ. of Com. Sys. of Higher Ed. v. Lincoln University Chapter of the Am. Assoc. Of Univ. Professors</u>, 354 A.2d 576 (Pa. 1976).  The arbitration agreement at issue reads:

> Arbitration Agreement: Agreement for Statutory Arbitration of Contractual Dispute.
>
> 1.   It is agreed that any controversy arising in connection with this contract may be submitted to binding arbitration . . . .  The parties further agree not to commence any suit, action or proceeding at law or in equity based upon any claim that is hereby made subject to arbitration, and this agreement may be presented as a complete defense to any such litigation.

Defs' Mot., Ex. A.

The defendants argue that the language of the arbitration clause covers every claim in the plaintiff's complaint, including the plaintiff's claims of abuse of process and malicious prosecution.  The Court does not agree with that reading of the agreement.

In this case the Court holds that the plaintiff's claims for abuse of process, malicious prosecution, and violation of the plaintiff's civil rights do not arise in connection with the parties' contract of sale of a vehicle by the defendant to the plaintiff.[1]

The Court recognizes that the object of dispute underlying the defendants' criminal complaint against the plaintiff were the rims of the truck that was the object of the parties' contract.  The parties' arbitration agreement, however, deals with a commercial transaction.  Nothing in that contract suggests that the parties contemplated the extension of their arbitration contract to any and all disputes that would not have arisen but for the parties' initial transaction.  Under such a reading, had an employee of DeSimone physically assaulted the plaintiff after discovering the missing rims, a claim for that assault would fall within the arbitration agreement concluded

---

[1]The plaintiff, at oral argument, withdrew his count for fraud to the extent that the count is based on the criminal prosecution of the plaintiff.  The remaining portion of that count, relating to the parties' commercial transaction, falls within the scope of the parties' arbitration agreement.

along with the sale of the plaintiff's truck.

        The Court will not read the arbitration agreement to
reach claims over conduct with only incidental connection to the
parties' underlying commercial transaction.  The Court,
therefore, will continue to consider those claims to which the
arbitration does not apply.


        B.    The Defendants' Motion to Dismiss Certain Claims

        The Court will now turn to the defendants' arguments
that the plaintiff has failed to state claims on which relief can
be granted on his counts for abuse of process, for malicious
prosecution and for violations of the plaintiff's civil rights.
Because the Court will dismiss the claims that do not fall within
the scope of the parties arbitration agreement, the Court will
dismiss the remainder of the complaint and order that the parties
proceed to arbitration according to their contract.  The Court,
therefore, will not reach the defendants' arguments concerning
those claims falling within the scope of the arbitration
agreement.


        1.    Abuse of Process

        The first claim falling outside of the scope of the
parties' arbitration agreement that the Court must examine is the
plaintiff's claim for abuse of process.  In Pennsylvania, to

establish a claim for abuse of process, it must be shown that the
defendant: 1) used a legal process against the plaintiff; 2)
primarily to accomplish a purpose for which the process was not
designed; and 3) harm has been caused to the plaintiff.  Werner
v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002).  A
claim of abuse of process depends on the perversion of a legal
process after its initiation.  "[T]here is no liability where the
defendant has done nothing more than carry out the process to its
authorized conclusion, even though with bad intentions."  Rosen
v. Tesoro Petroleum Corp., 582 A.2d 27, 32 (Pa. Super. Ct. 1990).

        The defendants argue that the plaintiff has not stated
a claim for abuse of process because he has not pleaded that the
legal process was used primarily to accomplish an illegitimate
purpose.  The defendants argue that DeSimone filed a criminal
complaint against the plaintiff in response to the plaintiff's
failure to return the original rims that he had replaced.  They
argue that the purpose for which a criminal complaint was filed
was to secure the return of their property.

        The plaintiff's opposition on this point argues that
the defendants' filed a criminal complaint against the plaintiff
due to the defendants' "inability to sell its loan to an assignee
for defendant's profit."  Opp'n at 17.  The plaintiff argues
that, because he was the rightful titleholder of the vehicle, a
claim of theft was improper.  Id.  The plaintiff "avers his

11

entitlement to keep the replaced rims because he was the lawful
and fully financed owner." Id.

The plaintiff fails to allege an improper purpose to
the defendants' filing of a criminal complaint.  The plaintiff's
theory of liability on this claim is that the defendants had no
right to reclaim the rims to the truck that the plaintiff had
returned.  The plaintiff's complaint, however, recognizes that he
voluntarily returned the truck after he determined that financing
for the purchase of the truck would not be possible.  He alleges
that he forgot to affix the original rims to the truck before
returning it.  He alleges that the defendants called to demand
the return of the replaced rims.

None of these claims would suggest that the defendants
utilized the criminal justice system for anything other than its
authorized purpose: in this case, securing the return of property
claimed to have been stolen.  The plaintiff's assertion that he
was the rightful owner of a part of the truck, which he
voluntarily returned to the defendant without having paid
anything, is insufficient to allege an improper purpose for the
filing of the criminal complaint.  The plaintiff's belief in his
right to the truck, or to its original rims, does not render the
defendants' actions illegal for purposes of a claim of abuse of
process.

2.   <u>Malicious Prosecution</u>

The defendants also move to dismiss the plaintiff's claim of malicious prosecution.  To state a claim of malicious prosecution, the plaintiff must allege facts supporting four elements: 1) that the defendant instituted criminal proceedings against the plaintiff; 2) that the initiation be without probable cause; 3) that the initiation be malicious; and 4) that the proceedings terminated in favor of the plaintiff.  <u>Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249</u>, 544 A.2d 940 (Pa. 1988).

A private actor may be liable for malicious prosecution where the private actor initiates or procures the criminal proceedings.  Criminal complaints by private actors do not generally constitute "procurement" of criminal proceedings where the actual initiation of criminal proceedings is left to official discretion.  If a person knowingly provides false information to the police, however, then "an intelligent exercise of the officer's discretion becomes impossible" and the private party may be liable.  <u>Bradley v. General Acc. Ins. Co.</u>, 778 A.2d 707 (Pa. Super. Ct. 2001).

In this case, the complaint contains no suggestion that the defendants lied about anything relevant to the police's decision to arrest the plaintiff.  The alleged falsehood told by the defendants to the police or to the District Attorney's office

13

was that the plaintiff was going to secure his own financing. Compl., ¶¶ 27, 34.  The information that precipitated his arrest, and the basis on which the plaintiff was prosecuted, was that he had failed to return the original rims along with the truck. There is no allegation, therefore, that the defendants used a falsehood to deprive the police or prosecutors of the intelligent use of their discretion in arresting and prosecuting the plaintiff.

The plaintiff's claim of malicious prosecution also fails because the plaintiff has not pleaded a lack of probable cause to conduct the prosecution.  The initiation of criminal proceedings against the plaintiff followed his admitted failure to return a part of the truck that he was relinquishing to the defendants.  Although theft may not have been the plaintiff's intention in replacing the rims and forgetting to return them with the truck, that admitted failure is enough to establish probable cause for a claim of theft by the defendants.  Moreover, the complaint states that a judge of the Philadelphia Municipal Court permitted the charges of theft and receipt of stolen property to progress against the plaintiff.  Although those charges were eventually dropped, such a holding implies the existence of probable cause to have continued with the prosecution.  See Ludmer v. Nernberg, 640 A.2d 939, 944 (Pa. Super. Ct. 1994).

3.   <u>Civil Rights Violations</u>

The plaintiff's complaint includes an eighth count for a civil rights violation under § 1983.  The count incorporates the earlier allegations and states that "to perpetuate their misconduct, defendants clothed themselves with color of state authority through the use of the Philadelphia Police Department, Municipal Court, and Court of Common Pleas."  Compl., ¶ 60.  The only allegations on which this count could plausibly be based are those relating to the defendants' initiation of criminal processes against the plaintiff.  Because the Court will dismiss the two counts pertaining to that conduct, and because no other allegations can stand as a basis for the plaintiff's 1983 claim, the Court will dismiss count eight of the complaint.

Moreover, the complaint does not allege that the defendants acted under color of law.  The ultimate inquiry in deciding whether the conduct of private actors is performed under color of law is whether such conduct is "fairly attributable" to the state.  <u>Leshko v. Servis</u>, 423 F.3d 337 (3d Cir. 2005).  The allegations of this complaint include no misconduct that is "fairly attributable" to the state.  The police acted on a criminal complaint for which there was probable cause to investigate and arrest the plaintiff and the state courts allowed the prosecution on the basis of that probable cause to progress.  Even had the defendants' criminal complaint been without a

15

legitimate purpose, that action is not fairly attributable to the state or any state actor.

III. <u>Conclusion</u>

The Court will grant the parties' arbitration agreement does not apply to counts six, seven and eight of the complaint, which are based on the underlying criminal complaint and prosecution.  The Court will, however, dismiss those counts for failure to state a claim.  The only claims left in this case fall within the scope of the parties' enforceable arbitration agreement.  The Court will, therefore, dismiss the case in its entirety and grant the defendants' motion to compel arbitration on those claims.

An appropriate order will follow separately.